CÓRDOVA *v.* SANTISTEBAN CHAVARRI & CO. ET AL.

APELACIÓN procedente de la Corte de Distrito de Arecibo.

No. 30.—Resuelto en Junio 25, 1904.

CONTRATOS SIMULADOS—CAUSAS—FRAUDE DE ACREEDORES.—Los contratos sobre traslación del dominio de bienes, celebrados después de abolido el impuesto de derechos reales, sin causa, ó con causa ilícita, según las leyes, y con la intención de defraudar á los acreedores de alguna de las partes, se reputarán simulados.

ID.—ENTREGA DE PRECIO—CONSIGNACIÓN DEL IMPORTE DE LOS CRÉDITOS.—Se reputan simulados los contratos sobre trasmisión de bienes, otorgados por personas que al hacerlos tuvieren contraidos débitos no hipotecarios, ó compromisos de garantizar deudas de otros, si el Notario no dá fé en la escritura de otorgamiento de haberse entregado el precio á su presencia, ó si tales personas no depositaren en efectivo, en un establecimiento á satisfacción de los acreedores el importe de sus obligaciones, á no ser que hubieren retenido suficientes bienes para cubrirlas.

DOCUMENTO PRIVADO—EFECTOS DE SU FECHA CON RESPECTO Á TERCEROS.—La fecha de un documento privado no se cuenta, respecto de terceros, sino desde el día en que se hubiere incorporado ó inscrito en un Registro público, desde la muerte de cualquiera de los que no firmaron, ó desde el día en que fuere entregado á un funcionario público por razón de su oficio.

PRUEBAS—DICTÁMEN PERICIAL.—Los Tribunales han de apreciar la fuerza probatoria de los dictámenes periciales según las reglas de la sana crítica, sin que vengan obligados á sujetarse á las resultancias de las mismas.

CONTRATOS SIN CAUSA Ó CON CAUSA ILÍCITA.—Los contratos sin causa ó con causa ilícita no producen efecto alguno.

DEMANDA—PETICIONES SUBSIDIARIAS.—Declarada sin lugar una demanda huelga hacer pronunciamiento alguno con respecto á las peticiones subsidiarias que en la misma se hubieren formulado.

## EXPOSICIÓN DEL CASO.

En el juicio seguido en el Tribunal de Distrito de Arecibo, entre partes, de la una como demandante Don Francisco D. Córdova y Stewart, mayor de edad, casado, vecino de Utuado, por su propio derecho, y de la otra, como demandados, la Sociedad Mercantil de esta Capital Santistebán Chavarrí y Compañía y Don Pedro Rivera Collazo, mayor de edad, viudo, vecino de Utuado, y en rebeldía, sobre tercería de dominio; cuyo juicio pende ante Nos á virtud de recurso de casación, hoy de apelación, interpuesto por el tercerista contra la sentencia que dictó el referido Tribunal, habiendo representado y dirigido á la parte recurrente ante esta Corte Suprema el Letrado Don Felipe Casaldúc Goicoechea y á la sociedad recurrida el Letrado Don Antonio Alvarez Nava, sin que haya comparecido Don Pedro Riverá Collazo.

*Resultando* que siendo dueño Don Pedro Rivera Collazo de una finca rústica situada en el barrio de Caonillas-arriba, término de Utuado, compuesta de doscientas cuerdas con ochenta y tres céntimos de otra, de cuya finca adquirió la mitad de su hermano Don Manuel Praxedes Rivera Collazo, por precio recibido de cinco mil pesos, mediante escritura pública otorgada en seis de Febrero de mil ochocientos noventa y siete, dió sesenta y cinco cuerdas á la sociedad mercantil Roses y Compañía, en pago de un crédito por escritura pública otorgada en siete de Agosto de mil novecientos, y por otra escritura posterior de catorce de Noviembre del mismo año, hipotecó cuarenta cuerdas á favor de Don José María Lafontaine y Pagan, para garantir el pago de un crédito de mil quinientos dollars, que se obligó á satisfacerle el treinta y uno de Enero del año siguiente ampliando la hipoteca á trescientos dollars más para gastos y costas, en caso de litigio.

*Resultando* : que por escritura pública otorgada en la ciudad de Utuado, en siete de Agosto de mil novecientos, por ante el Notario Don Francisco Y. Náter y Rivera, Don Pedro Rivera Collazo vendió á Don Francisco D. Córdova cincuenta cuerdas de terreno de la finca ya expresada de doscientas cuerdas y ochenta y tres céntimos de otra, por precio de mil ochocientos pesos oro americano, cantidad que el vendedor confesó haber recibido con anterioridad, habiendo sido inscrito tal documento en el Registro de la Propiedad de Arecibo, con fecha doce de Diciembre del propio año.

*Resultando* : que la sociedad mercantil de esta Capital Santisteban Chavarri y Ca., en escrito de tres de Diciembre de mil novecientos, solicitó del Tribunal del Distrito de Arecibo, despacho de embargo preventivo contra Don Pedro Rivera Collazo, sobre las noventa y cinco cuerdas ochenta y tres céntimos de otra que le quedaban de la finca de doscientas cuerdas con ochenta y tres céntimos, después de segregadas las sesenta y cinco cuerdas dadas á Roses y Cia., en pago de crédito y las cuarenta cuerdas hipotecadas á Don José Mª. Lafontaine, embargo tendente á perseguir el cobro de dos mil doscientos veinte y siete pesos noventa y ocho centavos moneda provincial, ó sean 1,336 pesos 79 centavos, oro americano, que les adeudaba Don Pedro Rivera Collazo, por capital é intereses liquidados en 30 de Noviembre del mes anterior, procedentes de siete pagarés, todos firmados por él, y tres de ellos suscritos también por Don Francisco D. Córdova, habiéndose decretado el embargo solicitado, en auto de 5 de Diciembre citado, diligencia que se hizo extensiva á una finca de 16 cuerdas que poseía en condominio Don Pedro Rivera Collazo con Don Francisco D. Córdova.

*Resultando* : que en veinte y nueve de Mayo de mil novecientos uno, Don Francisco D. Córdova, representado y dirigido por el Abogado Don Felipe Casuldúc Goicoechea, presentó ante la Corte de Distrito de Arecibo, demanda de tercería de dominio contra la sociedad mercantil Santisteban Chavarri y

Compañía y Don Pedro Rivera Collazo, alegando que de los terrenos embargados á instancia de la referida sociedad le correspondían cincuenta cuerdas, según la escritura otorgada á su favor por Don Pedro Rivera Collazo, en siete de Agosto de 1900, inscrita en el Registro de la Propiedad, cuyos terrenos en unión del condominio que en otra finca de diez y seis cuerdas tenía Don Pedro Rivera Collazo, se habían mandado sacar á pública subasta en juicio ejecutivo seguido por la referida sociedad contra Rivera Collazo, según providencia de primero de Mayo citado, señalándose para la subasta el día treinta del mismo mes; é invocando como fundamentos de derecho los artículos 348, 349 353 del antíguo Código Civil, los 1,530, 1,533, 1,534 y 1,535 de la Ley de Enjuiciamiento Civil, el 44 de la Ley Hipotecaria, las sentencias del Tribunal Supremo de España de 9 de Mayo y 23 de Septiembre de 1873, 17 de Junio de 1875, 5 de Abril de 1878, 10 de Octubre de 1882 y 19 de Febrero de 1886, y la Orden General No. 118, serie de 1899, concluyó con la súplica de que se dictara sentencia declarando que la finca de cincuenta cuerdas de terreno, á que se refiere la escritura expresada, de que acompañó copia, es de su exclusiva propiedad, lo mismo que sus frutos, dejándola, en consecuencia, á la libre disposición del tercerista, con las costas á cargo del que no se allanare á su pretensión.

*Resultando*: que citados y emplazados Santisteban Chavarri y Cia. y Don Pedro Rivera Collazo, éste fué declarado rebelde, por no haber comparecido en término legal, y la referida sociedad, al contestar la demanda, se opuso á ella y además formuló reconvención, concluyendo con la súplica de que se declarara sin lugar la tercería, y nulo ó rescindido el documento en que se funda por ser simulado y hecho en fraude de acreedores, cancelándose en el Registro de la Propidad las inscripciones que como consecuencia del contrato simulado se hubieren realizado; y en el supuesto de que no se accediera á esa pretensión, sea condenado Don Francisco D. Córdova á pagar á Santisteban Chavarri y Cia. la suma de seiscientos

cincuenta pesos provinciales, ó sean trescientos noventa dollars é intereses convenidos y devengados de la obligación mancomunada y solidaria que adeuda con el Rivera Collazo, disponiendo que por dicha suma é intereses, quede subsistente el embargo de las cincuenta cuerdas cuyo dominio reclama Córdova, y que se consideren como embargadas á éste.

*Resultando* : que en apoyo del primer extremo de la súplica de su contestación alegó la sociedad Santistèban Chavarri y Cia· que el contrato de venta del predio de cincuenta cuerdas de terreno por Don Pedro Rivera Collazo á su hermano político Don Francisco D. Córdova, era simulado y hecho en fraude de acreedores, pués esa venta se hizo con el mayor sigilo y por mucho ménos valor que el que la finca tenía entonces, á un hermano político que era casi indigente y que no pudo pagar el supuesto precio de mil ochocientos dollars; que tal venta se realizó precisamente en siete de Agosto de mil novecientos, el mismo día en que se cancelaba la hipoteca constituida á favor de Roses·y Cia., cuando el deudor Rivera Collazo se veía en el peligro de que sus acreedores embargaran sus bienes; que la traslación de dominio se efectuó después de abolido el impuesto de derechos reales, sin que diera fé el Notario de la entrega del precio, sin que se depositara en efectivo en un establecimiento bancario ó en otro cualquiera, á satisfacción de los acreedores, el importe total de las deudas de Rivera Collazo, y sin que éste tampoco retuviera en su poder bienes bastantes con que cubrirlas; que Don Pedro Rivera Collazo había venido poseyendo personalmente los terrenos de que se trata, encontrándose en ellos, después de practicado el embargo, su hermano Don Praxedes, quién en nombre de aquél los cultiva y administra : habiendo invocado la sociedad demandada, como fundamentos de derecho, los artículos 1,275 y 1,291 del antíguo Código Civil, la Orden General de 20 de Marzo de 1899, y las sentencias del Tribunal Supremo de España de 6 y 31 de Octubre de 1865, de 26 de Mayo de 1866, de 25 de Octubre de 1895 y 14 de Marzo de 1896.

*Resultando*: que la misma sociedad, en apoyo de su reconvención, alegó que además de las dos escrituras otorgadas en 7 de Agosto de 1900, por Don Pedro Rivera Collazo, una de venta de sesenta y cinco cuerdas á favor de Roses y Cia., por la suma de cuatro mil doscientos ochenta y nueve pesos diez centavos, oro americano, en pago de un crédito hipotecario, y la otra de venta de cincuenta cuerdas á Don Francisco D. Córdova, por supuesto precio de mil ochocientos dollars, cuando Rivera Collazo al otorgar esos documentos tenía acreedores personales, por cinco mil pesos próximamente, lo que conocía su hermano político Don Francisco D. Córdova, efectuó en diez y seis del mismo mes de Agosto otra enagenación simulada, de veinte y una cuerdas de terreno por quinientos dollars, á favor de Don Manuel Belén Perez, quien acaba de establecer otra tercería de dominio, y en catorce de Noviembre del propio año, hipotecó por mil quinientos dollars, cuarenta cuerdas más de terreno que en la actualidad no valen la mitad del gravámen que sobre ellas pesa; que ya sólo quedan á Rivera Collazo, libres de gravámen, la participación del condominio que le fué embargada y veinte y cuatro cuerdas ochenta y tres céntimos de otra de la finca de doscientos cuerdas, siendo ambas tierras de muy mala calidad, sin plantaciones y situadas en picachos de montes inaccesibles, y no valen más de cuatrocientos pesos, cuya suma ha de responder á las deudas personales de Rivera Collazo, ascendentes á tres mil dollars proximamente, entre ellas la de Santisteban Chavarri y Cia., montante á mil trescientos treinta y seis dollars con sesenta y nueve centavos, y unos quinientos dollars más de intereses y costas; que antes y después de celebrada la simulada venta de Rivera Collazo á Córdova estuvieren ambos ofreciendo á los acreedores del Rivera pagar los débitos de éste con las mismas tierras vendidas, pero á precio tan alto que no quisieron aceptar tan ruinosa operación; que al practicarse el embargo no protestó ni nada dijo Rivera Collazo respecto de la supuesta enagenación; y como hechos atinentes á la reconvención,

expuso que de prosperar la tercería, Santisteban Chavarri
y Cia. y los demás acreedores del Rivera no podrían
en manera alguna hacer efectivos sus créditos, pués si
por los bienes embargados nadie seguramente daría el im-
porte del crédito de la mercantil expresada, los bienes que
restarán á Rivera, deducidos los que están en litis, no alcanza-
rían para pagar los costas á que ha sido condenado en el ejecu-
tivo: que entre las siete obligaciones cuyas firmas y deudas es-
tán reconocidas y confesadas por Rivera, y en cuyos documen-
tos de crédito se fundan el embargo y ejecución de Santisteban
Chavarri y Cia. contra Rivera Collazo, se encuentra un pagaré
fechado en siete de Noviembre de 1896 y vencido en 31 de Di-
ciembre de 1899, por la suma de seiscientos cincuenta pesos
provinciales, ó sean trescientos noventa dollars, de cuyo im-
porte y sus intereses convenidos son deudores responsables
solidaria y mancomunadamente tanto Rivera Collazo como
Don Francisco Córdova y por tanto, en el supuesto de que no
se declare nulo y rescindido el contrato de compra-venta, que
motiva la tercería, deberá en todo caso quedar trabado el em-
bargo en las cincuenta cuerdas, por la suma é intereses de que
es responsable Córdova como deudor solidario: habiendo invo-
cado como fundamentos de derecho atinentes á la reconven-
ción, los artículos 1,108, 1,125 y 1,144 del anterior Código Civil
y el 1,398 de la Ley de Enjuiciamiento Civil.

*Resultando*: que conferido traslado de la reconvención á
Don Francisco D. Córdova alegó como hechos atinentes á la
misma que si bien era cierto que entre las obligaciones porque
se ejecutaba á Rivera Collazo, hay una por valor de seiscientos
cincuenta pesos provinciales, ó sean trescientos noventa dol-
lars, suscrita por aquél y por Córdova, era falso que estuviera
firmada solidaria y mancomunadamente, por lo que Córdova
no debe los trescientos noventa dollars, aunque podrá deber
en su día la mitad ó sean ciento noventa y cinco dollars: invocó
como fundamentos de derecho los artículos 1,137, 1,138 y 1,144
del antíguo Código Civil, y concluyó con la súplica de que se

dictara sentencia según lo solicitado en el escrito de demanda, declarándose sin lugar la reconvención, con las costas á Santisteban Chavarri y Cia.

*Resultando*: de las pruebas practicadas en el juicio á instancia de la parte actora: 1º. que ésta presentó varios recibos de contribuciones satisfechos por Don Francisco Córdova, en los años económicos de 1897 á 98, 98 á 99, 99 á 900 y 900 á 901, en concepto de riqueza territorial; una certificación expedida por el Alcalde Municipal de Utuado, en 19 de Agosto de 1901, en la que aparece que Córdova, como vecino y propietario del barrio de Caonillas arriba de dicho pueblo, venía figurando como contribuyente al Estado y Municipio desde el ejercicio económico de 1897 á 98 hasta el de 1900 á 1901, por un lote de tierra de 85 cuerdas y otra certificación expedida por el Tesorero de Puerto Rico en 28 de Octubre del año expresado, según la cuál Don Francisco D. Córdova, en planilla número 729, correspondiente al año económico de 1901 á 1902, declaró poseer en el barrio de "Caonillas arriba", de Utuado, cincuenta cuerdas de terreno valoradas en 494 dollars y un bohio valorado en seis dollars: 2º. que Don Pedro Rivera Collazo á instancia de Don Francisco D. Córdova presentó dos pagarés firmados ambos por Rivera Collazo, en 6 de Febrero de 1897, á favor de Don Manuel Praxedes Rivera, ó á su orden, por valor de mil quinientos pesos, cada uno de ellos, en concepto de dos plazos del valor de la finca que en la misma fecha 6 de Febrero de 1897, compró Don Pedro Rivera Collazo á Don Manuel Praxedes Rivera, cuyos documentos, vencederos, uno de ellos, en 6 de Febrero de 1899, y el otro, en igual día y mes del año siguiente, con abono del uno por ciento de interés mensual en caso de demora, endosó Don Manuel Praxedes Rivera á favor de Don Francisco D. Córdova, en 6 de Junio de 1899, por valor recibido, habiendo firmado Córdova, en siete de Agosto de 1900, el recibo del valor de ambos pagarés en cincuenta cuerdas de terreno vendidas por Don Pedro Rivera Collazo: 3º. que según certificación expedida

por el Secretario del Tribunal de Arecibo, en juicio ejecutivo seguido por .Santisteban Chavarri y Cia. contra Don Pedro Rivera Collazo, en cobro de pesos, figuran los siguientes documentos: Uno, por seiscientos cincuenta pesos, á vencer en 31 de Diciembre de 1899, con interés anual de doce por ciento desde su vencimiento, firmado por F. D. Córdova y Pedro Rivera Collazo, en siete de Noviembre de 1896, á favor de Don José Liberato Díaz, y endosado por éste en veinte y dos de Diciembre del año siguiente, á favor de Don Manuel Iguina Fuentes, quien lo endosó á Santisteban Chavari y Cia., en dos de Diciembre de 1900; otro pagaré por el valor de seiscientos pesos, á vencer el 31 de Diciembre de 1898, con el interés anual del doce por ciento, desde su vencimiento, firmado, en siete de Diciembre de 1896, por F. D. Córdova y Francisco Rivera Collazo, á. favor de Don José Liberato Diaz quién lo endosó, en 10 de Marzo de 1898, á favor de Don Manuel Iguina Fuente, y éste, á favor de Santisteban Chavarri y Cia.,en quince de Marzo citado; y un tercer pagaré por cincuenta y un pesos cincuenta centavos, á vencer el día último de Enero de 1898, firmado también por F. D. Córdova y Pedro Rivera Collazo, en 18 de Noviembre de 1896, á favor de Don Manuel Negrón Colón, quien lo endosó, en 24 de Enero de 1898, á Don Manuel Iguina Fuente, y éste, á Santisteban Chavarri y Cia., en 20 de Enero de 1899.

*Resultando*: de las pruebas practicadas á instancia de Santisteban Chavarri y Cia., 1º. que se trajo á los autos. copia certificada de los tres pagarés, de que se deja hecho mérito y además de la tasación pericial practicada por el perito Don Juan del Toro Cancel, en el juicio ejecutivo de Santisteban Chavarri y Cia., habiéndose verificado esa tasación en la forma siguiente: 5 cuerdas de vega á cuarenta y cinco pesos una, doscientos veinte y cinco pesos; noventa cuerdas con 85 céntimos de otra de terreno alto, á 20 pesos una, mil ochocientos diez y seis pesos, 60 centavos; ocho cuerdas que constituyen

el condominio que tiene Rivera Collazo en diez y seis cuer-
das, á 20 pesos una, 160 pesos; una casa almacen situada en
las 95 cuerdas, cien pesos; un glacis, quince pesos; cuyas par-
tidas dan el total de dos mil trescientos diez y seis dollars se-
senta centavos; 2º. que también se trajo á los autos copia cer-
tificada del escrito en que Santisteban Chavarri y Cia. con
fecha 3 de Diciembre de 1900, solicitaron el embargo preven-
tivo de bienes de Don Pedro Rivera Collazo, del auto de 5 de
Diciembre citado, por el que se decretó dicho embargo, de la
diligencia de anotación preventiva del mismo, del requeri-
miento de pago hecho á Rivera Collazo, habiendo expresado
éste que carecía en absoluto de metálico para hacer efectivas
las cantidades que se le reclamaban; de las declaraciones de
Don Manuel Iguina Fuentes y Don Pedro Rivera Collazo, re-
conociendo las firmas de los siete pagarés que se les pusieron
de manifiesto, añadiendo Rivera Collazo que era cierta la
deuda que los mismos entrañaban, y de la notificación hacien-
do saber á Rivera Collazo que quedaba ratificado el embargo
preventivo trabado en bienes de su propiedad;  3º. que igual-
mente se trajo copia de la escritura de compra-venta, otor-
gada en 16 de Agosto de 1900, por Don Pedro Rivera Collazo
á favor de Don Manuel Belén Perez, de 21 cuerdas de terreno
situadas en el barrio de Caonillas-arriba, del término muni-
cipal de Utuado, por quinientos pesos oro americano, que el
vendedor confesó tenía recibidos como saldo de sus cuentas,
con el comprador, con cuya escritura, como título, produjo
Don Manuel Belén Perez demanda de tercería de dominio,
ante la Corte de Arecibo en 26 de Junio de 1901, contra San-
tisteban Chavarri y Cia. y Don Pedro Rivera Collazo, por ser
parte esos terrenos de los embargados en los ejecutivos de
que se deja hecho mérito; 4º. que además vino como prueba
certificación expedida por el Registrador de la Propiedad de
Arecibo, de la que aparece que Don Pedro Rivera Collazo y
su hermano Don Manuel Praxedes adquirieron en común, á
título de donación como anticipo de legítima de sus padres,

una finca rústica de doscientas cuerdas con ochenta y tres centimos, situada en el barrio de Caonillas-arriba, término municipal de Utuado; que por escritura otorgada en 6 de Febrero de 1897 Don Manuel Praxedes Rivera vendió á su hermano Don Pedro el condominio que tenía en dicha finca por precio recibido de cinco mil pesos; que dueño el Don Pedro de la totalidad de la finca, trasmitióse la propiedad de 65 cuerdas de ella á la sociedad mercantil Roses y Cia. en pago de un crédito; que por escritura pública otorgada en Utuado en 7 de Agosto de 1900, é inscrita en 12 de Diciembre del mismo año, Don Pedro Rivera Collazo vendió á Don Francisco D. Córdova cincuenta cuerdas de la misma finca por precio recibido de mil ochocientos dollars; que por otra escritura otrgada en diez y seis de Agosto de 1900, Don Pedro Rivera Collazo vendió á Don Manuel Belén Perez veinte y una cuerdas de la misma finca por precio recibido de quinientos dollars, verificándose la inscripción de dicha escritura en catorce de Diciembre del propio año; que por escritura de catorce de Noviembre de 1900, el mismo Don Pedro Rivera Collazo hipotecó cuarenta cuerdas de la repitida finca á favor de Don José María Lafontaine ·por la suma de mil quinientos dollars; que Rivera Collazo se obligó á pagar en treinta uno de Enero de 1901, ampliando la hipoteca á trescientos dollars más para gastos y costas, en caso· de litigio; que de la finca de que se viene haciendo mención, sólo le quedan á Rivera veinte y cuatro cuerdas, y que Don Pedro Rivera Collazo y Don Francisco D. Córdova, tienen además inscrita á su favor, en común, la posesión de una finca de diez y seis cuerdas que adquirieron por compra hecha á Don José Liberato Diaz; 5º. que requeridos Don Liberato Diaz, Don Antonio María Fernández, Don Manuel Iguina Fuentes y Don Francisco Yrizarri, el primero manifestó que los únicos pagarés de que le era deudor Rivera Collazo, los endosó á Yguina Fuentes; el segundo, ó sea Fernández, que Rivera Collazo le era deudor de tres pagarés, los que fueron testi--

moniados en autos y montan 367 pesos, estando firmados en 22 de Febrero de 1897, uno de ellos por ciento veinte y dos pesos, á vencer en 30 de Enero de 1899, otro por igual cantidad, á vencer el 30 de Enero de 1900, y otro por ciento veinte y tres pesos, á vencer en 30 de Enero de 1898, los tres documentos con el interés del doce por ciento anual, á contar desde la fecha de su vencimiento, el tercero; ó sea Yguina Fuentes, que no le era posible exhibir los documentos de Don Pedro Rivera Collazo, que tenía á su favor, por haberlos endosado á Santisteban Chavarri y Cia.; y reconocidos los libros de aquél aparece que la cuenta de Rivera Collazo arroja, á su favor, 113 pesos, 81 centavos, vencidos en 30 de Diciembre de 1898, y que además le adeuda tres documentos vencidos en 30 de Enero de 1898, á saber: uno por cuatrocientos treinta y tres pesos cuarenta y seis centavos; otro por cincuenta pesos, y el tercero por cincuenta y un pesos cincuenta centavos, y también dos documentos más, uno de ellos vencido en 30 de Diciembre de 1898, por 50 pesos, y otro, por igual cantidad, vencido en igual día y mes del año siguiente, cuyas últimas partidas dan el total de seiscientos treinta y cuatro pesos noventa y seis centavos; y el cuarto, ó sea Yrizarry, dijo que Rivera Collazo le adeudaba poco más ó menos quinientos pesos, según documentos que se les traspapelaron después del último ciclón.

*Resultando*: que Don Pedro Rivera Collazo, al absolver posiciones, declaró que antes de hacer la venta á Córdova adeudaba á Don Manuel Iguina Fuentes 634 pesos con 96 centavos; á Don Antonio Ma. Fernández 367 pesos; á Don Franco. Irizarry 500 pesos, á Santisteban Chavarri y Cia. 1336 pesos 79 centavos, á Don José María Lafontaine 1500 pesos, y á Don Manuel Belén Perez 500 pesos, que en las escrituras otorgadas á favor de Don Manuel Belén Perez y Don José María Lafontaine, se dá como valor recibido el importe de las tierras enagenadas, porque él era deudor de dichos señores desde uno ó dos años antes del otorgamiento de dichas escrituras: que

antes de efectuarse la compra venta de las 50 cuerdas, él y su hermano político Don Francisco D. Córdova, estuvieron conferenciando con los acreedores Don Manuel Yguina Fuentes, Don Antonio María Fernández, Don Liberato Diaz y Don Francisco Yrizarry, y á todos ofrecieron pagar las deudas de Rivera Collazo con terrenos á razón de ciento setenta y cinco pesos provinciales cuerda habiendo insistido en lo mismo, después de la venta hecha á Córdova, sin que pueda precisar si los terrenos adquiridos por éste fueron ó nó ofrecidos á los acreedores, los cuales no aceptaron la forma de pago por juzgar excesivo el precio de los terrenos, y que ni antes ni después de la venta de los terrenos á Cordova, depositó en efectivo, en un establecimiento bancario ó en otro cualquiera, á satisfacción de sus acreedores personales, el importe total de sus obligaciones; y examinado Don Francisco D. Córdova, manifestó que los terrenos por los que pagaba contribuciones por los años 1899 y 1900 pertenecían á su esposa, y que antes de. realizar la compra de las cincuenta cuerdas, él y su hermano político Don Pedro Rivera Collazo se avistaron con Don Manuel Iguina Fuentes, Don Antonio Mª. Fernández, Don Liberato Diaz y Don Francisco Yrizarry, habiendo ofrecido Rivera Collazo pagar á sus acreedores con terreno á razón de ciento setenta y cinco pesos cuerda, cuya forma de pago no aceptaron, y que antes de comprar los terrenos á Rivera Collazo sólo tenía, como de su propiedad, en común proindiviso, ocho cuerdas, de diez y seis, cuyo producto líquido no alcanzaba á treinta pesos anuales.

*Resultando*: de la prueba pericial practicada á instancia de la sociedad demandada, que el perito nombrado por Don Francisco D· Córdova y el tercero, en discordia, valoraron en 4260 dollars las 65 cuerdas de terreno dados por Rivera Collazo á Roses y Cia. para pago de un crédito; en 630 dollars las veinte y una cuerdas vendidas por Rivera Collazo á Don Manuel Belén Perez, en 1960 dollars las 40 cuerdas hipotecadas á Don José Mª. Lafontaine: 1870 dollars las 50 cuerdas vendidas á

Don Francisco D. Córdova, á razón de 40 dollars cada cuerda, las 24 que han quedado á Rivera Collazo, después de hechas las anteriores enagenaciones; y en 960 dollars las 16 cuerdas que poseen en coindominio Rivera Collazo y Córdova, mientras de que el perito de Santisteban Chavarri y Cia. valoró en cuatro mil cien dollars los terrenos vendidos por Rivera Collazo á Roses y Cia.; en cuatrocientos veinte dollars las veinte y una cuerdas vendidas á Don Manuel Belén Perez; en 887 dollars 50 centavos las cuarenta cuerdas hipotecadas á Don José Ma. Lafontaine; en 1037 dollars con 50 centavos las 50 cuerdas vendidas á Córdova; en 497 dollars 60 centavos, las 24 cuerdas y centimos de otra que restaron á Rivera Collazo, después de hechas las anteriores enagenaciones; y en 160 dollars las ocho cuerdas que corresponden á Rivera Collazo de las 16 que tiene en condominio con Córdova.

*Resultando*: que entre los testigos presentados por Don Francisco D. Córdova figura Don Praxedes Rivera Collazo, hermano de Don Pedro de los mismos apellidos, y Don Manuel Martinez Mora, amigo íntimo de ambos, quienes afirman que al vender el primero, á Don Pedro Rivera Collazo, el condominio que tenía en las doscientas cuerdas de terreno adquiridas de sus padres, Don Pedro suscribió á favor de Don Praxedes obligaciones como importe de la negociación, cuyas obligaciones, dice Don Praxades, traspasó á favor de Córdova, por no haberselas pagado su referido hermano; habiendo declarado Don Manuel Yguina Fuentes, testigo presentado por la sociedad demandada, que antes de vender Don Pedro Rivera Collazo, á Don Francisco D. Córdova, las cincuenta cuerdas de terreno, ambos le ofrecieron á dicho testigo y á los demás acreedores de Rivera Collazo, pagarles con el valor de los terrenos de la finca de éste, á razón de 175 pesos cuerda, y después de hecha aquella venta volvieron á ofrecerle dichos terrenos, por igual suma, incluyendo en ellos las cincuenta cuerdas vendidas á Córdova.

*Resultando*: que el Tribunal del Distrito de Arecibo, por

sentencia de 11 de Febrero de 1902, declaró sin lugar la tercería de dominio interpuesta, y nula la escritura que la sirve de fundamento, sin que hubiera lugar á la reconvención formulada por la sociedad demandada, mandando que se cancele, en el Registro de la Propiedad, la inscripción de dicha escritura, así como cualquiera anotación que con motivo de ella se hubiese practicado, y quede subsistente el embargo trabado por Santisteban Chavarri y Cia., en bienes de Rivera Collazo, con las costas al tercerista.

*Resultando*: que contra esta sentencia interpuso la representación de Don Francisco D. Córdova, recurso de casación que le fué admitido, y elevados los autos á esta Corte Suprema, previa citación y emplazamiento de las partes, se tramitó dicho recurso como de apelación, en consonancia con la ley de 12 de Marzo del año próximo pasado, transformando el Tribunal Supremo de Casación, en Corte de Apelación; y señalado día para la vista, tuvo ésta lugar con asistencia de los Letrados de Don Francisco D. Córdova y Santisteban Chavarri y Cia., quienes alegaron cuanto estimaron conducente á la defensa de sus respectivas pretensiones:

Abogado del apelante: *Sr. Casaldúc.*

Abogado del apelado: *Sr. Alvarez Nava.*

La otra parte apelada no compareció.

El Juez Asociado Sr. Hernández, después de exponer los hechos anteriores, emitió la opinión del Tribunal.

*Considerando*: que la Orden Judicial de 5 de Marzo de 1899, rectificada por la del día 20 del proprio mes, establece en su artículo primero que los contratos sobre traslación del dominio de bienes celebrados después de abolido el impuesto de derechos reales, sin causa ó con causa ilícita, según las leyes, y con la intención de que los acreedores de alguno de los contrayentes no puedan hacer efectivos sus créditos en dichos bienes, se reputarán contratos simulados; y en su artículo segundo preceptúa que, en su caso, se estimarán com-

prendidos en el artículo anterior, los contratos sobre tras-
misión de bienes otorgados por personas que al hacerlo tenían
ó tengan contraidos débitos no hipotecarios ú otorgado com-
promisos de garantízar deudas de otros, si verificados aque-
llos contratos no dá fé el Notario, en la escritura, de haberse
entregado el precio á su presencia, ó no depositaren en efec-
tivo, en un establecimiento bancario, ó en otro cualquiera, á
satisfacción de sus acreedores, el importe total de aquellas
obligaciones, ó no retuvieren en su poder bienes bastantes con
que cubrirlas.   •

*Considerando*: que el contrato de compra-venta de cin-
cuenta cuerdas de terreno celebrado por Don Pedro Rivera
Collazo como vendedor y Don Francisco de Córdova como com-
prador, consignado en escruitura pública otorgada ante el
Notario de Utuado en 7 de Agosto de 1900, expresando Collazo
haber recibido de Córdova antes del otorgamiento de dicha
escritura el precio convenido de 1800 pesos, oro americano,
no ha tenido causa, pués el demandante, en la imposibilidad
de probar la entrega de la referida suma, ha tratado de justi-
ficar que el precio fué satisfecho con dos pagarés por valor
de mil quinientos pesos cada uno, que el vendedor Rivera Co-
llazo había librado á favor de su hermano Don Manuel Prax-
edes, al comprarle, por escritura de seis de Febrero de 1897,
su participación en el dominio de una finca que ambos herma-
nos habían adquirido de sus padres, pagarés que fueron en-
dosados á favor de Don Francisco D. Córdova y han sido
traidos al juicio, sin que Córdova haya conseguido su intento,
pués aparte de que tales documentos están en contradicción
con la mencionada escritura de siete de Agosto de 1900, en
que no se hace referencia á ellos, el artículo 1227 del anterior
Código Civil, aplicable al caso, ordena que la fecha de un docu-
mento privado no se contará respecto de tercero, sino desde
el día en que hubiese sido incorporado ó inscrito en un Re-
gistro público, desde la muerte de cualquiera de los que
lo firmaron, ó desde el día en que se entregase á un funcio-

nario público, por razón de su oficio, y además la veracidad de dichos pagarés no puede estimarse comprobada por las declaraciones de Don Manuel Praxedes Rivera y Don Manuel Martinez Mora, el primero parte interesada y el otro, amigo íntimo de los dos hermanos Don Pedro y Don Manuel Praxedes Rivera.

*Considerando*: que los créditos personales que tenía contraidos Don Pedro Rivera Collazo al otorgar á favor de Don Francisco D. Córdova, la escritura de siete de Agosto de 1900, que sirve de título á la tercería, son superiores al valor de los bienes que le quedaban al Rivera Collazo para cubrir sus obligaciones, si se estiman en conjunto los distintos elementos probatorios aportados al pleito, y si se tiene en cuenta la gran diversidad que existe, respecto á dicho valor, entre los juicios periciales emitidos, los que el Tribunal, según el artículo 631 de la Ley de Enjuiciamiento Civil, apreciará según las reglas de la sana crítica, sin estar obligado á sujetarse á ellos; por todo lo cuál, y no habiendo dado fé de la entrega del precio, el Notario autorizante de la escritura de 7 de Agosto de 1900, ni habiendo depositado Don Pedro Rivera Collazo en efectivo y, á satisfacción de sus acreedores, el importe total de sus obligaciones personales en la fecha expresada, es claro que el contrato consignado en la mencionada escritura fué simulado, no sólo con arreglo al artícuclo 1, sino también en consonancia con el 2, de la Orden Judicial ya citada.

*Consderando*: que en corroboración de la simulación del contrato de compra venta de que se trata en el juicio, viene la declaración de Don Manuel Yguina Fuentes, quién afirma que después de dicho contrato Don Pedro Rivera Collazo y Don Francisco D. Córdova ofrecieron á los acreedores de Rivera Collazo pagarles con terreno de éste, incluyendo los vendidos á Córdova, y el testimonio del mismo Rivera Collazo que no niega, sino que dice que no puede precisar, si el ofrecimiento se hizo extensivo á los terrenos vendidos á Córdova.

*Considerando*: que según el artículo 1275 del antíguo Código Civil, los contratos sin causa, ó con causa ilícita, no producen efecto alguno; y que por tanto, careciendo de causa el contrato de compra venta celebrado. por Don Pedro Rivera Collazo y Don Francisco D. Córdova, y habiendo sido hecho en fraude de Santisteban Chavarri y Cia., debe declararse nulo.

*Considerando*: que siendo subsidiaria la reconvención formulada por la sociedad mercantil Santisteban Chavarri y Cia., declarada sin lugar la demanda, huelga hacer pronunciamientos sobre dicha reconvención.

*Vistos*: los textos legales que se dejan citados, y la regla 63 de la Orden General No. 118 serie de 1899.

*Fallamos*: que confirmando, en lo conforme, y revocando, en lo demás, la sentencia apelada, debemos declarar y declaramos nula la escritura de compra venta de terrenos, otorgada en 7 de Agosto de 1900, por Don Pedro Rivera Collazo y Don Francisco D. Córdova, y por tanto, sin lugar la tercería de dominio interpuesta, con las costas de ambas instancias á cargo de Don Francisco D. Córdova, mandando se cancele en el Registro de la Propiedad de Arecibo la inscripción de dicha escritura, y se alce la suspensión del procedimiento de apremio en el juicio ejecutivo de que emana el presente; y devuelvánse los autos al Tribunal de Arecibo, con la certificación correspondiente.

Jueces concurrentes: Sres. Presidente Quiñones, y Asociados Figueras y MacLeary.

El Juez Asociado Sr. Sulzbacher no formó Tribunal en la vista de este caso.